## UNITED STATES v. WOERNDLE.

(Circuit Court of Appeals, Ninth Circuit. April 2, 1923.)

No. 3932.

1. **Aliens ☞71½—Issue as to fraudulent intent in procuring naturalization relates to time certificate was issued.**

A suit by the United States to cancel a naturalization being a suit in equity and governed by the rules of equity pleading and practice, the issues created by the pleading as to the fraudulent purpose in obtaining the naturalization necessarily relate to the state of mind at the time when the certificate of naturalization was obtained.

2. **Aliens ☞71½—Evidence of state of mind subsequent to naturalization is admissible.**

In a suit to cancel a certificate of naturalization on the ground that the alien fraudulently reserved allegiance to his former sovereign, evidence showing his state of mind toward his former sovereign subsequent to his naturalization is admissible on the issue of his state of mind at the time he obtained his certificate.

3. **Aliens ☞71½—Evidence as to sympathy with Germany before United States entered war held not to show naturalization was fraudulently obtained.**

Evidence that a naturalized citizen manifested sympathy for his former sovereign, Germany, before the United States entered the war, and severely criticized the President for aiding the enemies of Germany, but that after the United States entered the war he expressed no such similar sentiments, and aided in the prosecution of the war, *held* not to show that at the time he obtained his naturalization certificate in 1904 he fraudulently reserved a measure of allegiance to his former sovereign.

4. **Aliens ☞71½—Fraudulently permitting another to use passport held not to show naturalization was fraudulently obtained.**

The fact that a naturalized citizen obtained a passport, which he fraudulently permitted a German subject to use for the purpose of returning to Germany to enter the military service at the outbreak of the European war, though showing guilt of a felony, does not show, in a suit to cancel naturalization, that he was guilty of fraud by reserving allegiance to Germany, when he obtained naturalization 10 years before the war broke out.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by the United States against Joseph Woerndle to cancel citizenship. Decree for defendant, and the United States appeals. Affirmed.

John S. Coke and Lester W. Humphreys, U. S. Attys., both of Portland, Or.

C. T. Haas, of Portland, Or., for appellee.

Before GILBERT, MORROW, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The United States brought a suit to cancel the appellee's citizenship. The appellee was born in Germany. He came to the United States in 1897, having received from the German government a certificate of expatriation, whereby he renounced his German citizenship and was released from liability to German military

service. On August 23, 1904, in the state of Washington, he became a naturalized American citizen, and entirely renounced and abjured all allegiance and fidelity to every foreign prince, potentate, state, and sovereignty, and particularly to the emperor of Germany, and took oath in the prescribed form that he would support the Constitution of the United States. The bill of complaint alleged that the certificate of naturalization so issued to the appellee was procured by fraud, in that the appellee falsely swore that he renounced allegience to the emperor of Germany, when in truth and in fact he fraudulently reserved and kept in whole or in part his allegience and fidelity to the German imperial government. After hearing the evidence, the court below dismissed the complaint on the ground that there was no evidence of act, statement, or conduct indicating allegiance to or sympathy with Germany after the entry of the United States into the war.

[1-3] The suit thus brought, being a suit in equity (Luria v. United States, 231 U. S. 9, 34 Sup. Ct. 10, 58 L. Ed. 101), is governed by the rules of equity pleading and practice, and the issues created by the pleadings necessarily relate to the state of mind of the appellee at the time when, in August, 1904, he obtained his certificate of naturalization. But evidence was introduced and properly received to show his state of mind at subsequent periods, particularly during the time of the European War. The evidence consisted mainly of letters which the appellee wrote to his relatives in Germany. The letters show that, prior to the time when the United States became involved in the war he sympathized deeply with Germany, he expressed a hostile attitude toward her enemies, and bewailed her misfortunes and reverses, and expressed his hope of her ultimate victory. Occasionally, during that period, he criticized the attitude of the people of the United States toward the European War. He resented their sympathy with Germany's enemies, and he criticized the administration, and particularly the conduct of the President, which, he said, showed his sympathy with Germany's enemies and his apparent purpose to involve the United States in the conflict.

But from and after the date when the United States entered the war there is no evidence of any disloyal utterance or any disloyal act on the part of the appellee. On the contrary, the testimony is that, outwardly at least, he conducted himself as a loyal American citizen, that he purchased Liberty Bonds and contributed funds to the maintenance of the Red Cross and to the war activities of the Y. M. C. A. While some of the appellee's remarks concerning the administration and the President of the United States go to the extreme limit of permissible criticism, they were not more severe, or more drastic, than many such criticisms which at that time appeared in the public press and were uttered by American-born citizens of the United States. Taking all of the appellee's expressions of feeling and sentiment together, we are not convinced that they are such as to justify the conclusion that, at the time of taking his oath of allegiance to the United States, he intended to subordinate that allegiance to his allegiance to his native country, or that he fraudulently acquired his certificate of naturalization.

[4] One item of the evidence was his act in fraudulently obtaining a passport in his own name for the purpose of delivering the same to

Hans W. Boehm, a German, who had formerly been a captain in the German army, but who then resided in Portland, Or. Boehm desired to return to Germany in order to serve his native country in the war. Not being a citizen, he could obtain no passport. The passport so issued to the appellee was delivered to Boehm, together with a certified copy of the appellee's certificate of citizenship and an original patent, which had issued to the appellee, of land in California. Assuming the appellee's name and taking with him these documentary evidences of identity, Boehm left the United States for Germany, prior to the entry of the United States into the war.

The appellee, who was an attorney at law, knew that his act was punishable as a felony. He testified that he realized that he was doing a wrong thing against the United States, but that he did not figure the consequences of permitting Boehm to travel on the passport; that he felt grievously sorry for Germany, and that was the main reason for his action. His act, reprehensible and criminal as it is, can hardly be referred to as indicative of his mental attitude toward the United States at the time when, 10 years before, he was applying for a certificate of naturalization. Citizenship, once bestowed upon proceedings in the federal courts, should not be lightly taken away. The evidence that the applicant, while taking the oath of allegience, still retained in his heart a fraudulently concealed and stronger allegiance to another country, should be more clear and convincing than it is in the present case.

The judgment is affirmed.