**In re OPPENHEIMER.**

No. 21865

District Court, D. Oregon.

Feb. 23, 1945.

No appearances noted.

JAMES ALGER FEE, District Judge.

This is a hearing upon a petition for naturalization held in open court. The petitioner is a German of Nordic extraction. She came to this country in 1939. Her examination indicates that she has a good mind, since she passed all the usual tests of knowledge of government and stock questions as to organization and beliefs. Her husband was recently admitted by the court with the writer presiding. The testimony in his case, and the fact that he is a Jew, seemed to guarantee that he had no allegiance to the principles of the Nazi government. The court was not advised of his marriage to a person of German blood. If this had been called to the attention of the court much more scrutiny would have been given to the foundation. For all practical purposes that determination is now irrevocable. This woman would unquestionably have been admitted also if a hearing had not been conducted in open court, since she is recommended by the examiner under direction of the Central Office. Other than the unsupported testimony, there is no proof that applicant abandoned the principles of the government which is now at war with this country. She testified she fled from Germany but did not marry her husband until she got to England. The witnesses have only known her since she has lived in this country.

The law puts the burden of proving attachment to the principles of the Constitution squarely upon the petitioner. Once petitioner is admitted she is protected by the guarantees of the Constitution, while an enemy alien is subject to complete direction by the Executive or Congress. In the meantime neither the examiner nor the

court has sufficient knowledge, or information, to intelligently question the applicant.

If it be assumed in this case, as it was in the case of Schwab v. Coleman, 4 Cir., 145 F.2d 672, 673, that "There is no dispute as to the facts or as to their showing without contradiction that the petitioners are persons of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States", there would of course be no question to be considered. The very statement begs the very question here in issue. These are the very prerequisites to admission set by the statute. But the act places the burden of showing the possession of such qualities upon the petitioner. The certificate of admission should not be granted unless these qualities appears to the satisfaction of the court. The process where the hearing is in open court is a judicial one and the end in view is a judgment.

The public, and especially the body of citizenry, have an interest in the performance of duty by the court. The court must be able to find affirmatively that the petitioner is attached to the principles of the Federal Constitution. A mistake in this regard is for all practical purposes irremediable. See United States v. Baumgartner, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525.

▉ This court entirely repudiates the doctrine given specious recognition by a distinguished tribunal [1] in a cancellation case, that the law does not exact affection for or approval of our system of government, or patriotism, upon naturalization. While it is true that a naturalized person may subsequently depart from such fundamentals without laying ground for cancellation, the quality of loyalty to the principles of the Constitution of the United States is a mental or emotional state which is required as a condition precedent to admission. The applicant must be "well disposed to the good order and happiness of the United States" [2] which is a quality of the heart. The oath taken upon admission requires the citizen to "support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic" and to "bear true faith and allegiance to the same." [3]

These all may be summarized in the ethical characteristic, loyalty. This attitude of devotion cannot be replaced in the present state of the law by an international eclecticism upon the part of the alien seeking admission.

▉ Moreover, a vital distinction must be drawn between a proceeding for cancellation of a certificate already issued under a judgment, and a proceeding for primary admission. This is made plain by an excellent opinion of Judge Slick where it is said:

"The granting of citizenship in the first instance and cancelling citizenship for fraud are as wide apart as the poles. I am free to admit that if defendant were an applicant for citizenship, the evidence adduced in this case would cause me to hesitate and most likely refuse it or, at least, delay the granting of it until after the end of the war. In such a proceeding any reasonable doubt should be resolved against the applicant. The reverse is true in a proceeding to cancel citizenship once granted. Here defendant is entitled to the benefit of a reasonable doubt.

"This is recognized by the layman as well as the legal profession and a witness in this case unconsciously gave expression to this rule.

\* \* \* \* \* \*

"I agree with witness Johnson. I probably would not grant citizenship to defendant, but I am not satisfied to that degree required by the law to take away from him a right that should, and I hope does, value very highly." [4]

Again, upon the same point, Judge Black in the Western District of Washington lays down this distinction in an illuminating opinion, United States v. Giese, D.C., 56 F.Supp. 1018, 1023. It is there said:

"The decisions by the appellate courts in such Schneiderman [Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796], Baumgartner and Bergmann [Bergmann v. United States, 9 Cir., 144 F.2d 34] cases were not in any sense approval of the things those defendants did or said. Such decisions were instead declarations that American citizenship is so extremely precious that no one having it through naturalization court decree should be later deprived thereof unless the evi-

---

[1] See United States v. Rossler, 2 Cir., 144 F.2d 463, 465.

[2] 8 U.S.C.A. § 707(a) (3).

[3] 8 U.S.C.A. § 735(b).

[4] United States v. Heymig, D.C., 50 F. Supp. 566, 569.

dence should be so exceedingly strong as to be unequivocal as of the actual time such one took the oath.

"The Supreme Court in such late decisions makes it very clear that when the hearing is held upon an application for citizenship that the District Court is very free to, and should, deny the privilege at the hearing upon far less evidence than would have to be produced to cancel the certificate after it has issued. The Supreme Court says the time of admission is the time for careful scrutiny. It holds that before naturalization citizenship is a privilege which the court can and should withhold until affirmatively satisfied by evidence in petitioner's behalf. But if such a petitioner be admitted his citizenship becomes a right which the Supreme Court holds cannot be set aside except on extremely strong evidence against a defendant of his state of mind as of the date he was admitted."

The mere fact that Congress adopted provisions of the Nationality Code, 8 U. S.C.A. § 501 et seq., which permit the naturalization of enemy aliens under certain circumstances, does not indicate any intention to deprive this court of the power "to receive the testimony, to compare it with the law, and to judge on both law and fact." Spratt v. Spratt, 4 Pet. 393, 7 L.Ed. 897, quoted in United States v. Schwimmer, 279 U.S. 644, 649, 49 S.Ct. 448, 449, 73 L.Ed. 889. It certainly did not destroy the necessity of resting a judgment upon the supposed attachment of the alien applicant to the principles of the Federal Constitution.

Furthermore, since the proceeding ends in a judgment, the process should be judicial. Provisions are incorporated in the present statutes which require ninety days' notice to be given to the Commissioner and that, upon the objection of the Commissioner to the final hearing, the petition shall be continued from time to time and for so long as the Commissioner may require. This is a plain showing that it was the intention of the Congress that the Commissioner should be fully satisfied before he made his recommendation. This is an additional safeguard, but there is no prohibition in the statute against the court also continuing the cause from time to time until satisfied with the showing. Congress did not, nor did the statute, require that the court should accept without question the impression entertained by the Commissioner that the requirements of the statute had been met. The responsibility for the entry of the judgment is placed upon the shoulders of the court and not upon those of the Commissioner.

The whole German nation of civilians is to be put in tutelage in order to wean them from the doctrines of National Socialism. According to the plans they are to be denied intercourse and news of other countries until the virus is cleansed. This court is asked to accept the unsupported declaration of an unknown individual that although reared in such an atmosphere and of such a race, the virus has been eliminated and that she is actually devoted to the principles of the Constitution of the United States.

It is not to be expected that this court should go through the mummery of granting citizenship upon ex parte showings like a default divorce based on a property settlement. The public interest is involved. The body of the citizenry should not be polluted by admitting to citizenship those who still have ingrained within them the enforced teachings of Naziism. There is much report that the adherents of the Nazi principles are going underground and scattering all over the world. Innumerable cancellation cases show that numbers of Germans entered this country after the last war who adhered to the so-called "blood" philosophy which taught that blood is thicker than citizenship papers, and that one of German blood owed first loyalty to the German Volk regardless of the form of government there and regardless of citizenship. These people obtained the gift of citizenship and thereafter organized into groups which were both un-American and subversive. It is common knowledge that many of these persons were arrested by government agents and spirited out of critical areas without due process of law to meet military necessity. It is inconceivable that this court cannot obey the statute and be fully satisfied of the adherence to the principles of the Federal Constitution by this applicant in order to prevent the train of consequences which might conceivably follow admission.

It may be that the Commissioner has on hand, or can obtain from other agencies, evidence as to the prior life and experiences of this applicant which will be entirely satisfactory and satisfying. As above noted, this court has already admitted certain persons of German nationality when it was deemed that the circumstances were

such that further guarantees of loyalty and adherence were not necessary.

Patently, this court is not acting under the spur of hatreds engendered by war, but simply from an application of the wording of the statute and a cold-blooded appreciation of the consequences of admission to citizenship. It has heretofore been noted that the court is utterly helpless in either examining these petitioners or in attempting to uncover facts on examination. The court does not know what questions to ask and it is perfectly clear that the judge receives but little help from the Commissioner or the examiner. Therefore, the only method that the court has, if the judge be not obliged to rubber-stamp the action of the Commissioner and his recommendations, is to order the case postponed until further evidence can be produced by the petitioner who has the burden.

These views seem to bring the writer into sharp conflict with the opinion of appellate judges for whom the highest respect must be entertained. But after all, the primary responsibility rests upon the judge presiding in a naturalization court not to enter a judgment until he is satisfied that the applicant is possessed of the prerequisites to citizenship.

It is, therefore, ordered that this hearing be postponed until the applicant is in a position to produce further evidence.