### Petition of FIELD.

United States District Court
S. D. New York.
Nov. 18, 1953.

Edward L. Dubroff, Brooklyn, for Roselle Field.

Louis Steinberg, Dist. Counsel, Immigration & Naturalization Service, New York City, for Edw. J. Shaughnessy.

SUGARMAN, District Judge.

Roselle Field filed a petition for naturalization on February 17, 1953. In connection therewith she twice, in preliminary examinations, answered "No" to the question "9. Are you now or have you ever— * * * (c) Given false testimony to obtain benefits under the immigration or naturalization laws? * * *". In each instance, Mrs. Field swore to the truth of her answers. She

4. 8 U.S.C.A. § 155(a), now Immigration and Nationality Act, § 241, 8 U.S.C.A. § 1251.

5. United States ex rel. Karpay v. Uhl, 2 Cir., 70 F.2d 792.

was naturalized in this court on March 30, 1953.

Mrs. Field had been previously admitted for permanent residence in the United States on December 22, 1947 under a visa issued by the United States Consul in Colombia. In obtaining that visa she admits to having omitted disclosing residence in Russia from January, 1936, to July, 1937, in answer to an inquiry as to her places of residence since attaining fourteen years of age.

The Immigration and Naturalization Service first learned of this concealment in April, 1953, in a preliminary hearing on Mrs. Field's husband's petition for naturalization.

The government now moves, under F.R.Civ.P. 60(b), 28 U.S.C.A. for an order, in Mrs. Field's naturalization proceeding, "(1) Vacating and setting aside that part of the order of this court dated March 30, 1953, admitting the said Roselle Field to United States citizenship; (2) Restoring to the calendar of this court for rehearing petition for naturalization No. 618844, filed on February 17, 1953 by the said Roselie (sic) Field; (3) Directing the said Roselle Field to surrender to the Immigration and Naturalization Service at 70 Columbus Avenue, New York, New York, Certificate of Naturalization No. 7076600 heretofore issued to her * * *".

The government offers § 340(j) of the Immigration and Nationality Act of 1952[1] as the basis for the court's jurisdiction to grant the relief sought.

It has been said[2] that § 340(j) "overrules" Bindczyck v. Finucane, etc.[3] (decided when the Immigration and Nationality Act of 1952 was under consideration) which case "held that Congress, by providing for denaturalization under § 338 of the Nationality Act of 1940, had expressed the intent that this and the other denaturalization provisions of the statute, be the exclusive methods for cancelling the citizenship of naturalized persons" and that "[T]herefore a *State* court could not vacate the decree admitting an alien to citizenship within its term of court and pursuant to state law." (Emphasis supplied.)

Support for the view that § 340(j) was designed to overcome only the State court situation posed in the Bindczyck case may be found in the President's message vetoing the Immigration and Nationality Act of 1952 when he wrote[4]— "Naturalized citizens would be subjected to the risk of denaturalization by any procedure that can be found to be permitted under any State law or practice pertaining to minor civil lawsuits."

The government suggests that § 340(j) was "inserted by Congress to surmount the effect of the Supreme Court decision in the Bindesk (sic) matter and to give *all* naturalization courts power to vacate orders granting citizenship by motion for rehearing during the term of the court or within the time prescribed by the Rules of Civil Procedure governing the court." (Emphasis supplied.)

Mrs. Field's counsel seems to agree when he states "Sec. 340(j) is not a revision or recodification of any prior statutory language of similar nature, but is entirely new matter. It was obviously enacted to overcome the authority of the 1951 decision by the Supreme Court of the United States in the case of Bindczyck v. Finucane * * *".

At best, the association of § 340(j) with the Bindczyck decision is a guess—although a plausible one—for the appropriate documents[5] are mute as to the reason for its incorporation in the 1952 act. Its intent, therefore, must be

1. P.L. 414, 82nd Cong., 2nd Sess., June 27, 1952, c. 477, Title III, § 340(j), 66 Stat. 262, 8 U.S.C.A. § 1451(j).

2. Mich.L.Rev., 51:881 at 902, April, 1953.

3. 342 U.S. 76, 72 S.Ct. 130, 96 L.Ed. 100.

4. 98 Cong.Rec., Part 6, 8082 at 8084.

5. Senate Report No. 1137, Jan. 29, 1952 (to accompany S. 2550); House Report No. 1365, Feb. 14, 1952 (to accompany H.R.5678); Conference Report No. 2096, June 9, 1952 (to accompany H.R.5678); Debates, 98 Cong.Rec.

gleaned from within the four corners of the section itself.

■ On its own § 340(j)[6] amply justifies the limited relief sought herein by the government. This motion does not, as Mrs. Field's counsel urges, finally deny her citizenship. It merely vacates the decree granting it and places the parties back in their status as of immediately before her petition was allowed. That such regression leaves Mrs. Field still with the burden of establishing her right to citizenship,[7] as against the government's burden, had it proceeded under § 340(a) of the Immigration and Nationality Act of 1952 that her citizenship be revoked, is of no moment.

■ To the extent that, and the time within which, the motion seeks relief, F.R.Civ.P. 60(b) controls as the "rules of procedure * * * governing the jurisdiction of the court" contemplated by § 340(j) and the government's motion is therefore granted.

However, F.R.Civ.P. 60(b) permits the court, in granting a motion thereunder, to do so "upon such terms as are just".

The act provides that[8] "* * * no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act * * *".

Were the Immigration and Naturalization Service to initiate deportation proceedings against Mrs. Field immediately upon the entry of the order contemplated by the above granting of this motion, the hearing on her petition for naturalization would have to be stayed until the final determination of the deportation proceeding. It is more likely than not that such proceeding, if it administratively resulted adverse to Mrs. Field, would induce a writ of habeas corpus. In such event, the issue would be that of the materiality[9] of the concealment of her residence in Russia. Should she succeed on the writ, the parties would still be confronted with Mrs. Field's application for naturalization.

Foregoing any discussion of whether Mrs. Field's assumed success upon the writ would be *res judicata* of her right to citizenship, I am of the opinion that the time and energy of the parties and the court would best be conserved by requiring the initial disposition of the petition for naturalization that will be pending upon the entry of the order granting this motion. Such conservation results from the fact that the issue presented by the citizenship application is also the materiality of Mrs. Field's concealment of her residence in Russia. If the court finds that under world conditions then prevailing the concealment was immaterial to the issuance of the visa, Mrs. Field is legally here and, on that score, not to be denied naturalization. A circuity of proceedings is thus avoided.

In this explanation of the reason for imposing terms upon the granting of this motion, I again express no thought as to whether a ruling adverse to Mrs. Field on her petition for naturalization would be *res judicata* of any issue arising in a deportation proceeding should the Service ultimately initiate it.

Accordingly, the granting of the government's motion herein is conditioned

---

6. "Nothing contained in this section shall be regarded as limiting, denying, or restricting the power of any naturalization court, by or in which a person has been naturalized, to correct, reopen, alter, modify, or vacate its judgment or decree naturalizing such person, during the term of such court or within the time prescribed by the rules of procedure or statutes governing the jurisdiction of the court to take such action."

7. Immigration and Nationality Act of 1952, § 318, 8 U.S.C.A. § 1429.

8. See footnote 7.

9. United States ex rel. Cumberbatch v. Shaughnessy, 1953, D.C.S.D.N.Y., 117 F.Supp. 152.

upon its finally concluding the within naturalization proceeding before initiating any deportation proceeding against Roselle Field.

Settle an order in accordance with this decision.