**UNITED STATES of America, Plaintiff,**

**v.**

**Adiran (Adrian) Jacob WISDOM, a/k/a Adrianus Jacobus Koreneef, Defendant.**

**Civ. A. No. 2450.**

United States District Court, E. D. Tennessee, Northeastern Division.

Dec. 23, 1970.

John L. Bowers, Jr., U. S. Atty., Edward E. Wilson, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

H. R. Silvers, Milligan, Silvers, Coleman & Fletcher, Greeneville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

The defendant Mr. Adiran (Adrian) Jacob Wisdom, also known as Adrianus

Jacobus Koreneef, an alien, was admitted into the United States for permanent residence on January 2, 1957 with his wife, Grietje Van Der Lei, and their four children. He became acquainted through a church in Chicago, Illinois with the family of Miss Florence Rae Page. Miss Page sustained a concussion when she was four years of age and had been a retardant since. In 1963 or prior thereto, Mr. Koreneef made known to her family his intention to marry Miss Page. Miss Page was 23 years of age at the time, and Mr. Koreneef was 38.

This marriage was opposed actively by Miss Page's mother, Mrs. Pearl Page. She had known Mr. and Mrs. Koreneef for several years and was unconvinced that their legal relationship did not still maintain. Mr. Wisdom advised Mrs. Page that he was not married and asked her not to interfere, observing that his intended bride was of lawful age. Mrs. Page made several inquiries of local authorities concerning preventing the marriage and was told that the burden would be upon her to establish in any proceeding that Mr. Koreneef's marriage had not been dissolved.

Mr. Koreneef and Miss Page were married in a church wedding on April 27, 1963 by Dr. William Miller Hopper, a minister of the church which both were attending. A reception followed at the home of the new bride's grandmother. Mrs. Page did not communicate her suspicions to Dr. Hopper or any other person in authority. A daughter was born to the second Mrs. Koreneef on July 15, 1965. This child was placed in a foster home at the behest of Mr. Koreneef. After three or four years of cohabitation, Mr. Koreneef (Wisdom) and his second "wife" separated.

Mr. Koreneef filed an application to file a petition for naturalization with the United States Department of Justice, Immigration and Naturalization Service, on September 10, 1964. Therein, *inter alia*, he made the following responses to the following questions:

(5) How many times have you been married? *Once.* How many times has your husband or wife been married? *Once.* If either of you has been married more than once, fill in the following information for each previous marriage.

(Nothing was filled in.)

In accompanying statement of facts for preparation of his naturalization petition, Mr. Koreneef stated, *inter alia*, as follows:

\*　　\*　　\*　.　　\*　　\*　　\*

(6) I am _____ married _____ ; the name of my ~~husband~~
 (Single; married; divorced; widowed)
~~or~~ wife is (~~was~~) Grietje nee Van Den Lei; we were married on
 6 20 1951 at Rotterdam Netherlands; ~~he~~ or she was born
(Month) (day) (Year) (City or town) (State or country)
at Rotterdam _____ Netherlands _____ on Sept 8
 City or town) (County, district, province or State) (Month) (Day)
1928; entered the United States at New York New York on Jan
(Year) (City or town) (State) (Month)
 1 1957 for permanent residence in the United States and now re-
(Year) (Day)
 ☐ ~~with me~~
sides ☒ apart from me at Rotterdam Netherlands Gath; Beerman 58
 (Show full address if not living with you)
Stradt \* \* \*

Mr. Koreneef made oath before Mr. Thomas Miller Ragno, an examiner for the Immigration and Naturalization Service, that the statements on his application were true.

Following this interview, Mr. Ragno sent the following inter-office communications and made the following entry:

A10 690 305
9–10–64
A. J. KorneeF

To Mr. Petrone re FBI letter

Petr was born on 11–2–28 entered the U. S. on 1–2–57.

Petr has failed to register for the draft.

Petr was required to register within 6 months upon entering the U. S.

Petr's visa file contains registry information.

Tom Ragno
gen atty.

----

A10690 305
9–10–64
A. J. KornneeF

To Mr. Petrone. Re spouse letter

Please send a spouse letter in this case.

Petr wife's address is as follows

GRIETJE KORENEEF
GATH BEERMAN 58 STRADT
ROTTERDAM, NETHS.

Tom Rago
gen atty

A10690 305
A J. KoreneeF
9–10–64

Supplementary Report for File

Petr states he is living apart from his wife who is living in Rotterdam, Netherlands because of a death in the family. She has been there for about seven months with the Petr's eight children.

Petr was born on 11–2–28, entered the U. S. on 1–2–57, Since entering the U. S., petr has failed to register for the draft.

Petr states he knew of the requirement but thought he was going to be notified to register. I believe the petr and find he did not intend to evade the draft.

I request a spouse letter and an FBI letter in the case.

Tom Rago
gen atty

I adopt the above memorandum as my own.

PKPinkerton.

On his petition for naturalization no. 435530 of the same date to the United States District Court for the Northern District of Illinois, Mr. Koreneef stated, *inter alia,*

(6) I am * * * married; the name of my wife or husband is Grietje nee: Van Denlei, we were married on June 20, 1951, at Rotterdam, Netherlands, he or she was born at Rotterdam Netherlands, on Sept. 8, 1928 * * * and now resides at Rotterdam Netherlands —Gath Beerman Stradt 58 * * *

Mr. Koreneef made oath before Mr. Paul K. Pinkerton, another such examiner, that the statements in his petition were true.

Mr. Koreneef visited The Netherlands in October, 1964. Related to the scheduled hearing on his petition for naturalization, he made the following responses to the following questions under his oath on December 15, 1964 to Mr. Irving Schwartz, another such examiner:

* * * * * *

After the date you appeared with your witnesses and paid $10 to file your petition for naturalization:

* * * * * *

2. Have you been absent from the United States?

(2) Answer *No*

* * * * * *

8. The law provides that a petitioner for naturalization shall not be regarded as a person of good moral character who, at any time after his or her petition for naturalization has been filed, has committed adultery; has been a

prostitute; has procured any person for the purposes of prostitution; has been a narcotic drug addict; or has dealt in narcotic drugs illegally in any way. Have you committed such an act or been such a person?

(8) Answer *No* * * *

On December 15, 1964, the defendant Mr. Koreneef became a naturalized citizen of the United States, pursuant to the order of the United States District Court for the Northern District of Illinois, which issued to him certificate of naturalization no. 8713156 and changed his name to Adrian Jacob Wisdom.

At some time prior to or on June 9, 1966, Mr. Wisdom, after being advised of his rights to silence, counsel and against self-incrimination by Mr. Arnet D. Christensen, an investigator of the Immigration and Naturalization Service, made the following sworn answers to these questions:

\* \* \* \* \* \*

Q. How many times have you been outside the United States since January 2, 1957?

A. Three times since 1962.

Q. Would you describe these absences from the United States?

\* \* \* \* \* \*

A. \* \* \* I went over in October 1964 for whole day. \* \* \*

\* \* \* \* \* \*

Q. You mean to say you went from the United States to Rotterdam the same day?

A. I left Monday. I was there for about a day and I went back the same day, altogether 36 hours. I couldn't make up my mind.

\* \* \* \* \* \*

Q. How many times have you been married?

A. This is my second time.

Q. Twice?

A. Yeah.

Q. Who did you marry the first time?

A. Grietje Van Der Lei.

\* \* \* \* \* \*

Q. Where did you marry your first wife?

A. Rotterdam, Netherlands.

Q. When did you marry her?

A. 1951, the 20th of June.

\* \* \* \* \* \*

Q. Have you and your first wife ever been legally separated?

A. Not that I know.

Q. Have you ever obtained a divorce from her?

A. Not to my sight [sic].

Q. To your knowledge, did your first wife ever obtain a divorce from you?

A. Yes, she did.

Q. Do you have any record of the divorce?

A. I have a confused record.

Q. Do you have any legal document which shows your divorce from your first wife?

A. I got nothing.

\* \* \* \* \* \*

Q. Who did you marry the second time?

A. Florence Page.

Q. Are you still married to her?

A. Yeah.

Q. Are you still living with her?

A. No, she is in a mental institution.

Q. When did you marry Florence Page?

A. Oh, in about 1963, I believe.

Q. Where at [sic]?

A. In Chicago.

\* \* \* \* \* \*

Q. What is her date of birth?

A. Fourth of August, 1939.

Q. \* \* \* Where is this mental institution?

A. Irving Park State Hospital. She was admitted last week.

\* \* \* \* \* \*

Q. Are you legally separated from Florence Page?

A. No, we didn't have any court at all.

Q. Has she obtained a divorce from you or have you obtained a divorce from her?

A. No.

Q. Have you and Florence Page had any children together?

A. One.

Q. What is her name?

A. Christine.

Q. Born in Chicago?

A. Yeah.

Q. When?

A. July 15th.

\* \* \* \* \* \*

Q. When you petitioned to become a citizen of the United States, were you married to Florence Page at that time?

A. Yes.

\* \* \* \* \* \*

Q. Did you tell the examiner that you were married to Florence Page at that time?

A. No.

Q. Why didn't you tell him?

A. I didn't want to.

\* \* \* \* \* \*

Q. In your petition, when you were asked who [sic] you were married to, you said Grietje Van Der Lei, but actually you were married to Florence Page also at that time. Is that correct?

A. Yes, that is right.

\* \* \* \* \* \*

Q. Do you remember the question, "have you ever committed adultery?"?

A. Yeah. My statement was no.
\* \* \*

Mr. Wisdom and his first wife were divorced in Rotterdam, The Netherlands in December, 1966. He was a resident of this district at the time this action was commenced, 8 U.S.C. § 1451(a), but has been out of contact with his attorney since answering in this action.

The question is whether, for the period of five years preceding his naturalization, Mr. Wisdom was a person of good moral character. " \* \* \* No person, except as otherwise provided in this subchapter, shall be naturalized unless such petitioner, \* \* \* (3) during all the period referred to in this subsection has been and still is a person of good moral character \* \* \* ". 8 U.S.C. § 1427. " \* \* \* For the purposes of this chapter—

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

\* \* \* \* \* \*

"(2) one who during such period has committed adultery;

\* \* \* \* \* \*

"(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter \* \* \*." 8 U.S.C. § 1101. The order admitting Mr. Wisdom to citizenship may be revoked and the certificate of citizenship issued to him cancelled where they were " \* \* \* procured by concealment of a material fact or by willful misrepresentation \* \* \* ". 8 U.S.C. § 1451(a).

█ It has been shown that the petitioner for naturalization Mr. Wisdom, during the period for which good character was required of him, committed adultery in a bigamous marriage and gave false testimony for the purpose of obtaining a benefit under the Immigration and Naturalization Act; thus, he cannot be found to have been a person of good character within the meaning of the statutory requirements for naturalization. Berenyi v. District Director, Immigration and Naturalization Service (1967), 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656, 662[9]; Re Haniatakis, C.A.3rd (1967), 376 F.2d 728, 721[1], 730–731[2, 3]; Petition for Naturalization of K., D.C.Md. (1959), 174 F.Supp. 343, 345–347[2]

■ The living together of Mr. Koreneef and the former Miss Page in an open state of adultery, as if the relation of husband and wife lawfully existed between them, and their habitual intercourse, constituted adultery. Miner v. People (1871), 58 Ill. 59. The presumption of Mr. Koreneef's guilty intention to commit bigamy arising from his second invalid marriage to Miss Page is conclusive; because, that such was the legislative intention is demonstrated by the fact that the bigamy statute contains an exception in favor of anyone who has obtained a valid divorce. People v. Spoor (1908), 235 Ill. 230, 85 N.E. 207. It is no defense to a charge of bigamy that the accused, in contracting a second marriage, may have believed that his former marriage had been terminated by divorce, when in fact no divorce had been granted. *Idem.*

■ American citizenship is a privilege to be given, qualified, or withheld as the Congress may determine. Mr. Wisdom could claim such, as of right, only if he complied with the terms the Congress had imposed. The citizenship he acquired through naturalization was not a second-class citizenship; he was invested with substantially all the rights and privileges of citizenship which accompany birth in this country. But, Mr. Wisdom has no moral or constitutional right to retain the benefits of his citizenship, because he gave false evidence to obtain those benefits and practiced an imposition on the United States District Court for the Northern District of Illinois, which obviously would not have issued him a certificate of citizenship had he answered all the questions asked him truthfully. An alien will not be permitted through concealment and misrepresentation to perpetrate a fraud upon the court naturalizing him.

■ However, the standard of proof required to denaturalize a naturalized citizen is strict. The United States must have carried its burden of proving by " * * * 'clear, unequivocal, and convincing' evidence, which does not leave 'the issue in doubt', that the citizen who is sought to be restored to the status of an alien obtained his naturalization certificate illegally. * * * " Knauer v. United States (1946), 328 U.S. 654, 657, 66 S.Ct. 1304, 1307, 90 L.Ed. 1500, 1503 (headnote 4). The Court finds that the United States has proved herein by clear, unequivocal and convincing evidence, which does not leave the issue in doubt, that Mr. Wisdom obtained his certificate of naturalization illegally, in that he was not a person of good moral character during the five years preceding December 15, 1964, when he was issued a certificate of naturalization, pursuant to the order of the United States District Court for the Northern District of Illinois; because during that period he had committed adultery, and further because he gave false testimony for the purpose of obtaining benefits under United States Code, title 8, chapter 12.

This Court finds specifically that the aforementioned order admitting him to citizenship was procured by Mr. Wisdom by concealment and misrepresentation of material facts, as follows:

(1) that on September 10, 1964, he misrepresented the fact that he had been married only once, concealed the fact that he had been married more than once, and concealed the fact that he was "married" bigamously on April 27, 1963 at Chicago, Illinois to Florence (nee) Page, who was born in Chicago, Illinois on August 4, 1939, and resided in that city; and,

(2) that on December 15, 1964, he misrepresented the fact that he had not been absent from the United States between September 10, 1964 and December 15, 1964, concealed the fact that he had been in The Netherlands in October, 1964, and misrepresented the fact that he had committed adultery in a bigamous "marriage" between September 10, 1964 and December 15, 1964.

As has been observed for the Supreme Court by Mr. Justice Douglas,

* * * we are dealing in cases of this kind with questions of intent. * * * Intent is a subjective state, illusory and difficult to establish in absence of voluntary confession. What may appear objectively to be false may still fall short of establishing an intentional misrepresentation which is necessary in order to prove that the oath was perjurious. * * * [U]tterances made in years subsequent to the oath are not readily to be charged against the state of mind existing when the oath is administered. * * *

Knauer v. United States, *supra*, 66 S.Ct. at 1307, 90 L.Ed. at 1054 (headnotes 6, 7). The intent of Mr. Wisdom is not difficult to establish here. He swore to the investigator, a mere 18 months after having neglected to reveal the fact of a bigamous "wife" to the examiner, that he had not revealed this information to the examiner because he " * * * didn't want to. * * *" All his actions and statements at the time of his neglect permit the reasonable inference that such was his intention; that he did not "want to" reveal this information, because it would have resulted in his not gaining the benefits of citizenship. The necessary element of intent is clearly and convincingly present herein.

The United States attorney for this district shall present first to adversary counsel and then to this Court a proposed order, revoking the order of December 15, 1964 of the United States District Court for the Northern District of Illinois, admitting the defendant Adrianus Jacobus Koreneef to citizenship and cancelling certificate of naturalization no. 8713156 issued to him, directing the clerk of this Court to transmit a certified copy of such order to the Attorney General and to transmit this memorandum, and order and judgment entered pursuant hereto, to the United States District Court for the Northern District of Illinois, and giving notice to the defendant to surrender such certificate of naturalization to the Attorney General. 8 U.S.C. § 1451(h).