**Petition of Eduardo Littao AREVALO
To be Admitted a Citizen of the
United States of America.**

No. 38263.

United States District Court,
D. Hawaii.

Dec. 4, 1972.

Charles F. Fell, Hawaii Legal Service Project, Legal Aid Society of Hawaii, Honolulu, Hawaii, for petitioner.

Lawrence A. L. Scheftel, Gen. Atty., Immigration and Naturalization Service, Honolulu, Hawaii, for respondent.

## DECISION AND ORDER DENYING MOTION TO REOPEN

SAMUEL P. KING, District Judge.

The United States, through the Immigration and Naturalization Service (INS), seeks here to reopen an order and judgment naturalizing Eduardo Littao Arevalo as a citizen. The government's case was brought by motion in a summary hearing, pursuant to § 340(j) of the Immigration and Nationality Act, 8 U.S.C. § 1451(j); Rule 60(b), Federal Rules of Civil Procedure.

Arevalo was born in the Philippines in 1942. On February 20, 1967 he married Rosalina Azada, a United States citizen, in the Philippines. An immigrant visa was issued to him by the United States Embassy in Manila on December 21, 1967. He entered this country on January 18, 1968. Two children of the marriage were born here: Eduardo, Jr., on June 27, 1967, and Elisa Rose, on January 14, 1970.

Testifying under oath that this had been his only marriage, Arevalo filed a petition for naturalization on March 1, 1971. He was admitted to citizenship as the spouse of a United States citizen on April 30, 1971, under § 319(a) of the Act. This section accelerates naturalization for such spouses.

The government now moves to vacate the order granting citizenship, and to restore Arevalo to a "pending status". Certain newly discovered evidence, it alleges, indicates that Arevalo was married in the Philippines in 1963 to one Leoncia Navalta, and that the marriage was never legally terminated. It further alleges that Arevalo fathered Miss Navalta's child, Jerry, born in the Philippines in October, 1963.

The evidence includes a document purporting to be a marriage contract between Arevalo and Miss Navalta. It is dated July 10, 1963, and bears the signature "Ed [or Eddie] Arevalo."

In addition, there are affidavits sworn before an officer of the INS in Manila. One of these is signed "Leoncia N. Arevalo." It asserts that the signer married Arevalo on July 10, 1963 and that their son was born October 6, 1963. Another, signed "Rafaela T. Crispin" and "Roman A. Bigornia," maintains that the affiants were Philippine municipal officials who presided at the wedding.

Arevalo testified that he knew Leoncia Navalta. He conceded that he might be the father of her child. However, he denied that he had ever married her. He further denied that the signature on the marriage contract was his.

To support his claim of forgery, Arevalo offered the testimony of an apparently qualified and experienced handwriting expert. The witness described her detailed examination of the marriage contract signature. She compared it with known exemplars of Arevalo's signature. The signatures, she concluded, were not done by the same hand.

The Court's own inspection of the signatures, while not based on any claim to expert knowledge, does reveal important differences in style between those speci-

mens known to be genuine and that on the disputed contract.

The government did not call any witnesses. In effect, it argued that its affidavits constituted a prima facie showing that Arevalo had won his citizenship through fraud. This was sufficient, in its view, for the court to vacate the order granting citizenship.

In this Circuit, it has been held that a motion under Rule 60(b) to vacate a judgment or order is addressed to the sound discretion of the court. The moving party must bear the burden of establishing fraud by clear and convincing evidence. England v. Doyle, 281 F. 2d 304 (9th Cir., 1960).

The Supreme Court has set an even higher standard of proof for the government to meet in denaturalization proceedings. It has declared that "naturalization decrees are not lightly to be set aside—the evidence must indeed be 'clear, unequivocal and convincing' and not leave 'the issue . . . in doubt'." Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 149, 5 L.Ed.2d 120 (1960).

Bearing that in mind, we note that the INS has not even attempted a showing which would justify employment of a summary remedy in the present case. There is no claim that important government interests are in jeopardy, or that any situation exists which might compel the United States to seek immediate relief.

On the other hand, if we were to reopen the order on this summary basis, restoring Arevalo to pending status, the effects on him would be drastic. He would be deprived automatically of his American citizenship. The burden of proof would shift from the government to Arevalo, and he would have to prove his fitness for citizenship. Thus the clear mandate of the Supreme Court would be evaded, in a case where the government's proof is in serious question, rather than "clear, unequivocal and convincing." He would be denied the opportunity to challenge the adequacy of the evidence against him before an impartial tribunal. Instead, he would have to press his case before the administrative agency which has already accepted the reliability of hearsay accusations against him.

Congress has specifically provided, in the Act, a means by which the government can move to revoke citizenship once granted. 8 U.S.C. § 1451(a). The statute requires the United States attorney (rather than counsel for the INS), upon showing of good cause, to institute a plenary court action for the purpose of revoking and cancelling citizenship unlawfully obtained. This method does not contemplate a "reopening" for the purpose of restoring the petitioner to pending status, so that his case may then be dealt with administratively.

The present case calls for renewed emphasis of the proposition that citizenship acquired through naturalization is not second class. Knauer v. United States, 328 U.S. 654, 658, 66 S. Ct. 1304, 90 L.Ed. 1500 (1946). Of course the government has the right, and the obligation, to see to it that this extremely valuable benefit is never conferred upon one who tries to obtain it fraudulently. The INS has adopted administrative procedures appropriate to that end.

Once citizenship has been granted, however, the naturalized American may not ordinarily be deprived of his status without being afforded his statutory right to due process. Congress has provided for a plenary action in a court of law. This is the procedure which should normally be followed by the government, absent some special necessity which might justify a summary hearing under § 1451(j). In re Campbell's Petition, 326 F.2d 101 (2d Cir., 1964).

The government's motion is denied.