Petition of Shebs **CARDINES**, also known as Eusebio Torres Cardines

To be Admitted a Citizen of the United States of America.

No. 6847.

District Court of Guam.

Sept. 28, 1973.

## MOTION TO REOPEN ORDER AND JUDGMENT OF NATURALIZATION

DUENAS, District Judge.

### ORDER

Cardines, hereinafter referred to as the petitioner, became a citizen of the United States through naturalization on order of this Court dated September 18, 1972.

The United States Government, by the Officer in Charge of the Guam Office of the Immigration and Naturalization Service, hereinafter referred to as INS, under the provisions of Section 340(j) of the Immigration and Nationality Act [8 U.S.C. § 1451(j)] and Rule 60(b)(2) of the Federal Rules of Civil Procedure, now moves to have said order of this Court, insofar as it relates to the petitioner, reopened and held in abeyance, to have the petition for naturalization of the petitioner restored to a pending status, to have a further determination on the merits of the petitioner's qualifications for naturalization made, and to have said order vacated in the event the petitioner is found ineligible for naturalization.

The Government, in its motion, alleges that since the entry of this Court's order it came to the attention of the INS that at the time the petitioner filed his petition for naturalization and at the time he was naturalized he was well aware that he had married his second wife without first legally terminating his prior marriage which information he knowingly and wilfully concealed and withheld from the naturalization examiner for the purpose of facilitating his naturalization. The Government further contends that these facts, if known at the time the petitioner filed his petition for naturalization and appeared in court for naturalization, would have precluded his naturalization, that the INS was ignorant of this information which was material to his naturalization, and if in possession thereof would have made a denial recommendation of his petition to this Court and that by due diligence the INS could not have discovered this evidence in time to move for a denial of his petition.

The petitioner raises several questions in opposing the Government's motion.

It is the contention of the petitioner that the motion should have been filed by the United States attorney and not by the Officer in Charge of the INS on Guam. He further objects on the ground that the motion should have been

supported by an affidavit showing good cause.

By raising these questions it appears that the petitioner is attempting to imply that, in spite of the existence of Section 340(j), the Government should have instituted proceedings under Section 340(a) as said section is and should be the exclusive procedure for cancelling citizenship.

This is not a denaturalization proceeding under Section 340(a) where the burden rests on the Government to prove that the naturalized citizen obtained naturalization by fraud or concealment. On the contrary, the Government is proceeding under Section 340(j) and invoking Rule 60(b)(2) for the purpose of having the naturalization judgment of this Court reopened upon the ground of newly discovered evidence and having the petition for naturalization restored to its pending status for further determination on the merits of the petitioner's qualifications.

The Immigration and Nationality Act of 1952 provides two methods by which the Government may attack a judgment of naturalization that it believes was wrongfully obtained [In re Campbell's Petition, 326 F.2d 101 at 102, 2 Cir., 1964].

 Section 340(a) [8 U.S.C. § 1451(a)] authorizes a plenary action to set aside a naturalization order "procured by concealment of a material fact or by wilful misrepresentation * * *" and designates the United States attorneys specifically to institute the proceedings. Under this procedure an affidavit showing good cause is an indispensable procedural prerequisite to suit [United States v. Zucca, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964 (1956)]. No statute of limitations is involved and the time within which the action must be commenced is not circumscribed. The standard of proof required to denaturalize a naturalized citizen is strict, and the Government must carry its burden of proving by clear, unequivocal, and convincing evidence, which does not leave the issue in doubt, that the citizen who is sought to be restored to status of an alien obtained his naturalization certificate illegally or fraudulently [United States v. Wisdom, 320 F.Supp. 286, USDC Tenn., 1970; Knauer v. United States, (1946), 328 U.S. 654, 657, 66 S. Ct. 1304, 1307, 90 L.Ed. 1500, 1503 (headnote 4)].

Section 340(j) [8 U.S.C. § 1451(j)] authorizes the invocation of the summary procedure of Rule 60(b) of the Federal Rules of Civil Procedure to reopen a naturalization judgment within one year after it was entered. On motion and upon such terms as are just, the court may relieve a party from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

The court in the case of Simons v. United States, 333 F.Supp. 855, pages 861 through 866, 1971, offers as follows, in part, an excellent résumé of the historical aspect of these two subsections:

"Prior to the first federal effort to codify the law of naturalization pursuant to the constitutional authority in Article I, Sec. 8, cl. 4, 'to establish a uniform Rule of Naturalization,' the authorities are contradictory as to who had the right to challenge naturalization decrees. The court's jurisdiction appears to have been assumed, and the real issue was who had standing to raise the matter.

"Section 15 of the Naturalization Act of 1906 provided that 'it shall be the duty of the United States district attorneys' to initiate denaturalization proceedings. Although on balance the authorities appear to support the conclusion that this authorization was to be the exclusive means to attack naturalization decrees, there were occasions when the courts permitted direct attacks on such decrees by others.

"Section 15 was subsequently re-enacted as Section 338(a) of the Nationality Act of 1940 [54 Stat. 1137, 1158]. The same language was used with the same resulting ambiguities. The issue of whether or not the authority given the United States Attorney was exclusive was finally determined in Bindczyck v. Finucane, 342 U.S. 76, at 83, 72 S.Ct. 130, 96 L.Ed. 100 (1951), where, the Court held that Section 338(a) was a 'self-contained, exclusive procedure.'

"This holding in *Bindczyck* was specifically abrogated by Section 340(j) of the Immigration and Nationality Act of 1952: * * *

"The Supreme Court took cognizance in United States v. Zucca, 351 U.S. 91, 95, 76 S.Ct. 671, 674, 100 L.Ed. 964 (note 8) (1956), that Section 340(j) constituted a legislative mandate overruling *Bindczyck* in certain respects:

'The specific holding, that Section 338(a) of the 1940 Act overrode local rules concerning time limitations upon the power of state courts to reopen their judgments, was abrogated by Section 340(j) * * *.'

"This view of the effect of Section 340(j) of the 1952 Act appears equally applicable to the prior *Bindczyck* holding that Section 338(a) was a 'self-contained, exclusive procedure.'

"By the explicit language of Section 340(j) we are directed to look to the rules and statutes governing the jurisdiction of the court. Rule 60(b), F.R.Civ.P., now guides the exercise of this court's authority to modify its judgments. Rule 60(b) states:

'This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, * * * or to set aside a judgment for fraud upon the court.'

"Thus the rule does not limit this aspect of the court's 'inherent power to set aside a judgment for fraud practiced upon it.' 7 Moore's Federal Practice Par. 60.16 [15], p. 89 (1970 Ed.). More specifically, it provides that within a reasonable time '(o)n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for * * * (6) any other reason justifying relief from the operation of the judgment.'

"Rule 60(b) further provides that 'the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.' * * *

"Just as Rule 60(b) alone has been applied to challenges to denaturalization decree, see, e. g., United States v. Kunz, 5 F.R.D. 391 (S.D.N.Y.1946), aff'd 163 F.2d 344 (2d Cir. 1947); United States v. Karahalias, 205 F.2d 331 (2d Cir. 1953); Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), so also the same rationale supports recourse to the rule in challenging a naturalization decree under Rule 60(b) and Section 340(j). 'Thus it appears that Congress does not consider the exercise of such power to be inconsistent with statutory denaturalization.' Note, 'Developments in the Law of Immigration and Nationality,' 66 Harv. L.Rev., 643, 718 (see also 717–19, 728–31) (1953).

"As was stated in In re Campbell's Petition, 326 F.2d 101, 102 (2d Cir. 1964):

'Section 340(j) is a grant of power to the court to reopen its naturalization judgments and is stated in permissive terms. It is well settled

that motions for relief under Rule 60(b) are addressed to the discretion of the court. Fischer v. Dover S. S. Co., 218 F.2d 682 (2d Cir. 1955); England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960)."

Succinctly phrased, it appears (1) that at one time Section 338 of the Nationality Act of 1940, which corresponded to the present Section 340(a), was the exclusive procedure for canceling citizenship of naturalized citizenship [Bindczyck v. Finucane, supra], and (2) that Section 340(j), which never appeared in the laws previously [Simons v. United States, supra, 333 F.Supp., footnote 10, page 862], was a legislative mandate overruling *Bindczyck* in certain respects, particularly the prior holding that Section 338(a) was the exclusive procedure.

Action under section 340(j) does not have the effect of setting the decree aside or reversing it or otherwise affecting its validity. It is, in fact, a method of obtaining a hearing on the merits of the case, the decree in the meanwhile remaining in force and effect. If the consideration of the merits does not establish any grounds for setting the decree aside, the decree operates as though it had never been disturbed. If, however, grounds for setting the decree aside are established upon hearing on the merits, an order to vacate follows. As the court in the case of Petition of Field, 117 F. Supp. 154, U.S.D.C.N.Y., 1953, states at page 156, "This motion does not * * * finally deny (petitioner's) citizenship. It merely vacates the decree granting it and places the parties back in their status as of immediately before (petitioner's) petition was allowed. That such regression leaves (the petitioner) still with the burden of establishing (petitioner's) right to citizenship [Sec. 318 of the Immigration and Nationality Act], as against the government's burden, had it proceeded under Section 340(a) of the Immigration and Nationality Act of 1952 that her citizenship be revoked, is of no moment."

The courts are divided as to whether subsection (a) or subsection (j) of Section 340 should be relied on in a situation such as presented herein, that is, whether the action will be a plenary proceeding under subsection (a) or a summary proceeding pursuant to subsection (j).

In the case of In re Campbell's Petition, supra, the Court of Appeals affirmed the lower court's ruling denying the Government's motion to reopen by summary proceedings, and held that, in deciding whether to exercise its discretion to allow disposition of the case by summary proceeding under subsection (j) or to require the Government to proceed by a plenary action under subsection (a), the lower court had not committed error in considering the difference between the relative positions of the parties and the placement of the burden of Proof in a summary proceeding and in a plenary action.

In the *Campbell* case, supra, the Government in its motion to reopen alleged that the naturalized person made a false statement of material fact at the time of filing his petition for naturalization. The judge in the lower court believed that the value of American citizenship should not be debased by summary suspension and concluded that the Government should normally seek cancellation of citizenship in a plenary suit—at least in the absence of a showing of circumstances making summary relief necessary to protect particular Government rights. The Court of Appeals, however, concluded that "although the matters discussed by [the District Court] did not require denial of the motion [under subsection (j)], it was appropriate for the district judge to consider them in relation to the exercise of his discretion."

In a recent Hawaii case, Petition of Arevalo, 352 F.Supp. 215, U.S.D.C.Haw., 1972, the Court held that where the order and judgment had naturalized an alien claiming to be married to an American citizen, and the Government's proof

on the motion to reopen under subsection (j) consisted of a questioned document purporting to be a previous marriage contract entered into by the alien and affidavits, and the Government showed no need for a summary remedy which would shift the burden of proof to the new citizen and compel him to press his claim before administrative officials who had already accepted the reliability of the proof against him, relief under Rule 60(b) would not be granted and the Government would be left to its statutory plenary action under subsection (a) to revoke and cancel citizenship unlawfully obtained. The Court noted that the INS had "not even attempted a showing which would justify employment of a summary remedy * * * [and that] (t)here is no claim that important government interests are in jeopardy, or that any situation exists which might compel the United States to seek immediate relief."

The Court in the *Arevalo* case, supra, 352 F.Supp., states at page 217 in part as follows:

" * * * If we were to reopen the order on this summary basis, restoring (petitioner) to pending status, the effects on him would be drastic. He would be deprived automatically of his American citizenship. The burden of proof would shift from the government to (the petitioner), and he would have to prove his fitness for citizenship. * * * He would be denied the opportunity to challenge the adequacy of the evidence against him before an impartial tribunal. Instead, he would have to press his case before the administrative agency which has already accepted the reliability of hearsay accusations against him.

"Congress has specifically provided, in the act, a means by which the government can move to revoke citizenship once granted. 8 U.S.C. Section 1451(a). The statute requires the United States attorney (rather than counsel for INS), upon showing of good cause, to institute a plenary court action for the purpose of revok-

ing and cancelling citizenship unlawfully obtained. This method does not contemplate a 'reopening' for the purpose of restoring the petitioner to pending status, so that his case may then be dealt with administratively. * * *

"Once citizenship has been granted, however, the naturalized American may not ordinarily be deprived of his status without being afforded his statutory right to due process. Congress has provided for a plenary action in a court of law. This is the procedure which should normally be followed by the government, absent some special necessity which might justify a summary hearing under Section 1451(j)." [citing In re Campbell's Petition, supra]

Concerning the burden of establishing fraud, the Court in the *Arevalo* case, supra, 352 F.Supp., states on page 217, that "(i)n in this (9th) Circuit, it has been held that a motion under Rule 60(b) to vacate a judgment or order is addressed to the sound discretion of the court. The moving party must bear the burden of establishing fraud by clear and convincing evidence." [citing England v. Doyle, supra]

This Court, rather, agrees with the holding in the cases of Petition of Field, supra, In re Naturalization of Bartkiw, 199 F.Supp. 762, U.S.D.C.Pa., 1961, and In re Bortle, 244 F.Supp. 319, U.S.D.C. D.C., 1965, wherein the view was expressed that remedy under Section 340(j) was available to the Government as it "cannot be questioned that Congress had the power to grant the Immigration and Naturalization Service an additional method such as provided by Section 340(j) to that formerly limited to proceedings under Section 338 where it was necessary that the Government file a specific complaint and prove its case by clear, unequivocal and compelling evidence" [In re Bartkiw, supra, 199 F.Supp. at 765].

■ Section 340(j) specifically authorizes this Court to correct, reopen, al-

ter, modify or vacate its own judgment or decree provided it is done during the term of this Court or within the time prescribed by the rules of procedure or statutes governing the jurisdiction of this Court to take such action and this Court consequently holds that the INS has properly invoked the provisions of said Section 340(j) and Rule 60(b)(2) under which "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)" is a reason or ground for moving to relieve a party from a final judgment of this Court.

■ The Court in the *Arevalo* case by relying on England v. Doyle, supra, states that in the 9th Federal Judicial Circuit the moving party in a motion under Rule 60(b) must bear the burden of establishing *fraud* by clear and convincing evidence with which view this Court is in agreement [see also Moore's Manual on Federal Practice and Procedure, Vol. 2, Sec. 26.07, page 1914 and cases cited in footnote 8]. The burden upon the moving party under (2) of rule 60(b) is different. In the *England* case, supra, "fraud" was the element involved in a motion to set aside the court's judgment or order. Fraud was also involved in the *Arevalo* case wherein the Government argued "(i)n effect * * * that its affidavits constituted a prima facie showing that Arevalo had won his citizenship through *fraud* * * * (and that) (t)his was sufficient, in its view, for the court to vacate the order granting citizenship" [352 F.Supp. at page 217]. (emphasis supplied)

Concerning the standard of proof required on the moving party under Rule 60(b), a distinction is drawn between the standard required under (2) thereof as in the instant case and under (3) thereof as in the *Arevalo* and *England* cases. In this case, unlike the *Arevalo* and *England* cases, the INS is not proceeding under (3) on the basis of fraud but under (2) on the basis of "newly discovered evidence."

■ Under (2) of Rule 60(b) all that is required on the part of the moving party is that there must be a showing that the alleged newly discovered evidence was discovered since the trial; facts from which the court may infer reasonable diligence on the part of the moving party; that the evidence is not merely cumulative or impeaching; that the evidence is material; and the evidence is of such a character that on a new trial it will probably produce a different result [McCullough Tool Company v. Well Surveys, Inc., 343 F.2d 381 at 410, 10 Cir., 1965, rehearing denied April 20, 1965; Kansas City Southern Railway Company v. Cagle, 229 F.2d 12, 10 Cir., cert. denied 351 U.S. 908, 76 S. Ct. 697, 100 L.Ed. 1443; Crow v. Dumke, 142 F.2d 635, 10 Cir. To prevail on the motion, the moving party must show that the failure to discover the new evidence during or preceding trial was not due to his lack of diligence [Valmont Industries, Inc., v. Enresco, Inc., 446 F.2d 1193, 10 Cir., 1971, rehearing denied Sept. 29, 1971].

■ Herein the INS has amply shown that there was no lack of due diligence on the part of the Government, that the evidence was not and could not by the exercise of diligence have been discovered in time to present in the original proceeding, and that it was of such a material and controlling nature as would probably induce a different conclusion and was not cumulative. The evidence was, in fact, newly discovered and discovered since the judgment of this Court of September 18, 1972.

■ A motion under this rule does not affect the finality of a judgment. If the motion is granted, the petition for naturalization is simply restored to the court calendar as a pending petition, and is governed by the same procedures as are applicable to other pending petitions. This means that the petitioner, not the INS, bears the burden of proof to show that he meets all requirements for naturalization [In re Campbell's Petition, supra, 326 F.2d at

102] and contrasted with the burden applicable to revocation proceedings, the Government does not carry the onus of showing that the petitioner is disqualified from naturalization. Where the petition for naturalization is restored to its pending status, the petitioner is placed in the original position where he was and the burden then falls upon him, and not upon the Government, to show his eligibility for citizenship in every respect since at that moment he is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Doubts should be resolved in favor of the United States and against the petitioner [Berenyi v. District Director, 385 U.S. 630, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967); United States v. Macintosh, 283 U.S. 605, 626, 51 S.Ct. 570, 75 L.Ed. 1302; In re Petition of Haniatakis, 376 F.2d 728 at 731, 3 Cir., 1967]. In naturalization proceedings, having asked a question which it deems significant to determine the qualification of one seeking citizenship, the Government is entitled to full disclosure [Berenyi v. District Director, supra, 385 U.S. at 638, 87 S.Ct. 666, 17 L.Ed.2d 656; United States at Montalbano, 236 F.2d 757, 759–760, 3 Cir., 1956, cert. denied, sub nom., Genovese v. United States, 352 U.S. 952, 77 S.Ct. 327, 1 L.Ed.2d 244 (1956), involving revocation of citizenship].

■ Naturalization proceedings are judicial and not administrative wherein the petitioner and the Government are both parties [United States v. Macintosh, supra; In re Stasinopulos, D.C. Mich., 21 F.2d 71]. It is a proceeding in open court on a petition for naturalization and ends in a judgment [In re Oppenheimer, D.C.Or., 61 F.Supp. 403 (1945)]. The responsibility for admitting aliens to citizenship is lodged in the courts by law [Section 310 of the Immigration and Nationality Act, 8 U.S.C. § 1421], and the work of the naturalization examiners is intended to be of assistance to the courts in discharging that responsibility [Petition of De Leo, D.C.Pa., 75 F.Supp. 896 (1948)]. Section 335(b) of the Immigration and Nationality Act empowers the designated naturalization examiners to conduct preliminary examinations upon petitions for naturalization to any naturalization court and *to make recommendations* thereon to such court. Further, under said Section, such examiners are authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any petitioner for naturalization. (emphasis supplied)

■ In providing for a hearing in open court on petitioner's demand in proceeding for naturalization, Congress did not intend merely to empower the court to review the recommendations of the naturalization examiner, but intended a hearing de novo, in which the court must decide issues upon testimony which it bears, and in which neither testimony heard by the examiner, his findings not his recommendations are material [Subsections (a)(b) of Section 336 of the Immigration and Nationality Act; Application of Murra, 166 F.2d 605, 7 Cir., Feb. 11, 1948]. Consequently, the petitioner herein will not be denied but will be afforded every opportunity to challenge the adequacy of the evidence against him before this Court should the INS decide to make an adverse recommendation. Consequently further, since proceedings in naturalization are not administrative but judicial, the INS is not empowered to deal petitioner's case administratively.

■ The exclusive control over the admission of individuals to citizenship by the process of naturalization is vested in Congress by the Federal Constitution, article I, section 8, whereby Congress is given power "to establish an uniform rule of naturalization * * * throughout the United States." Persons are admitted to citizenship only when it is to the interest and advantage of the nation and not at all to gratify persons' desire or serve their interest [in re Caroni, 13 F.2d 954 (1926)]. "(n)ot only is United States citizenship a 'high priv-

ilege', it is a priceless treasure" [Mr. Justice Black's observation in Johnson v. Eisentrager, 339 U.S. 763 at 791, 70 S. Ct. 936, 950, 94 L.Ed. 1255 (dissenting) (1950)], and is "all that makes life worth living" [Knauer v. United States, supra, 328 U.S. at 659, 66 S.Ct. 1304, 1307, 90 L.Ed. 1500]. A party may be found to have standing where he has been caused an "injury in fact" and where his injury "is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question" [Association of Data Processing Service v. Camp, 397 U.S. 150, 152, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); Simons v. United States, supra, 333 F.Supp. at 865]. It is also necessary that the party have the "personal stake and interest that impart the concrete adverseness required by Article III" [Barlow v. Collins, 397 U.S. 159, 164, 90 S.Ct. 832, 836, 25 L.Ed.2d 192 (1970); Simons v. United States, supra, 333 F.Supp. at 865]. The latter issue, as it relates to naturalization, has been determined in Tutun v. United States, 270 U.S. 568, 577, 46 S.Ct. 425, 427, 70 L.Ed. 738 (1926), where Mr. Justice Brandeis stated for the Court as follows:

"Whenever the law provides a remedy enforceable in the courts according to the regular course of legal procedure, and that remedy is pursued, there arises a case within the meaning of the Constitution, whether the subject of the litigation be property or status. A petition for naturalization is clearly a proceeding of that character.

"The petitioner's claim is one arising under the Constitution and laws of the United States. The claim is presented to the court in such a form that the judicial power is capable of acting upon it. The proceeding is instituted and is conducted throughout according to the regular course of judicial procedure. The United States is always a possible adverse party * * *. The judgment entered, like other judgments of a court of record, is accepted as complete evidence of its own validity unless set aside."

In the instant case important government interests are in jeopardy and at stake which interests must be protected. It is apparent that citizenship status involves international complications and is a matter of great importance to individuals and to the United States in diplomatic relations. The meaning of "citizenship" and its use in the United States have been explained by Mr. Chief Justice Waite in the case of Minor v. Happersett, 88 U.S. 162, 21 Wall. 162, 165, 22 L.Ed. 627 (1875) as follows:

"There cannot be a nation without a people. The very idea of a political community, such as a nation is, implies an association of persons for the promotion of their general welfare. Each one of the persons associated becomes a member of the nation formed by the association. He owes it allegiance and is entitled to its protection. Allegiance and protection are, in this connection, reciprocal obligations. The one is compensation for the other: allegiance for protection and protection for allegiance. * * * *"

A petitioner must act in good faith which means a fair and full disclosure by him of all of the facts to INS and to the court [United States v. Shapiro, 43 F.Supp. 927 (D.C.Cal.1942)] when he is affirmatively asking the United States Government for citizenship, a "priceless treasure." It would be unjust to have to place upon the Government an onerous burden in seeking to have a naturalization judgment reopened for further determination on the merits by clear, convincing and unequivocal evidence where the petitioner did not act in good faith. It is in and will serve a public interest and permits inquiry by this Court into the validity of its own decree. The maxim that "no man may take advantage of his own wrong" is deeply rooted in our jurisprudence and has been applied in many diverse classes of cases by both law and equity courts [Glus v. Brooklyn Eastern Terminal, 359 U.S.

231, 232–233, 79 S.Ct. 760, 762, 3 L.Ed. 2d 770 (1959)].

Parties other than the United States attorneys may invoke the provisions of Section 340(j) and Rule 60(b) [Simons v. United States, supra, 333 F.Supp. at page 865; see e. g., Petition of Taulapapa, 282 F.Supp. 156, USDC Haw., 1968]. Consequently, the petitioner's contention that the motion was not filed by the United States attorney in this case is without merit.

 Although an affidavit showing good cause is prerequisite to the maintenance of a suit under Section 340(a), such affidavit is not required under Section 340(j) and Rule 60(b)(2) since Rule 60(b) provides that the procedure for obtaining any relief from a judgment shall be by *motion* as prescribed in the rules. As the Court in the case of Simons v. United States, supra, 333 F. Supp. stated at page 865, the INS is not relying on Section 340(a) and its failure to file the affidavit required by said Section 340(a) does not bar the Government from proceeding under Section 340 (j) and Rule 60(b).

The petitioner claims that the "notice is defective" without stating the reasons therefor. This Court finds that under Rule 16 pertaining to Motions, Memoranda, Oral Arguments, Notices of the Local Rules of this Court of September 1, 1973, the notice given to the petitioner by INS is not defective.

This Court entered its judgment on September 18, 1972 and the INS filed its present motion to reopen on September 11, 1973. This Court, therefore, finds that the Government did in fact file its motion within one year as provided for in Rule 60(b). Under Rule 7 of the Local Rules of this Court, all civil actions, including the instant motion, brought before this Court "shall be governed by the Federal Rules of Civil Procedure as heretofore or hereafter promulgated by the Supreme Court of the United States."

Section 340(j) and Rule 60(b)(2) amply justify the limited relief sought herein by the Government. The granting of the Government's motion does not deny the petitioner citizenship but merely places the petitioner back in his status as of immediately before his petition was granted and leaves the petitioner still with the burden of establishing his right to citizenship.

Now, therefore, good cause appearing, it is ordered, adjudged and decreed, that the Order and Judgment of Naturalization of September 18, 1972, insofar as the above-numbered petition and the above-named petitioner are concerned, to wit, line 51 on page 2 of List No. 296, be reopened and held in abeyance pending further determination on the merits of petitioner's qualifications for naturalization, subject to being vacated in the event that the petitioner is found ineligible at a subsequent hearing herein, or for such other action as may be appropriate.