**Irina GORBACH, et al., Plaintiffs,**

**v.**

**Janet RENO, et al., Defendants.**

**No. C98–278R.**

United States District Court,
W.D. Washington,
at Seattle.

Aug. 7, 1998.

**644**

Daniel Levy, Bernard P. Wolfsdor Professional Corp., Pacific Palisades, CA, Vibiana Andrade, Linton Joaquin, National Immigration Law Center, Los Angeles, CA, Jonathan S. Franklin, Cori F. Flam, Hogan & Hartson, Washington, DC, for Plaintiffs.

Michelle R. Slack, U.S. Department of Justice, Washington, DC, Christopher Lee Pickrell, U.S. Attorney's Office, Seattle, WA, for Defendants.

ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DENYING DEFENDANTS' MOTION FOR A STAY PENDING APPEAL

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on the defendants' motion for a stay and their objections to the Magistrate Judge's Report and Recommendation (R & R) on class certification. The court has reviewed the pleadings and documents in support of and opposition to the motion and the R & R. Being fully informed, the court denies the motion for a stay and adopts the R & R.

## I. DISCUSSION

The background facts of this case are fully set forth in this court's order granting a preliminary injunction and in the Magistrate Judge's R & R.

### A. Motion for Stay

█ The defendants have offered the court no persuasive reason for granting a stay in this matter. Any time limitations on filing denaturalization proceedings will be tolled during the pendency of this lawsuit. The court finds that a stay, therefore, is unwarranted.

### B. Motion for Class Certification

█ The court finds that the plaintiffs' objections to class certification are without merit. The court is not persuaded that a nationwide class is inappropriate in this case. The court is mindful that at least one other lawsuit challenging the regulations at issue here has been filed in another circuit. And it recognizes that there is a danger that a nationwide class "may have a detrimental effect by foreclosing adjudication by a number of different courts ... and of increasing, in certain cases, the pressures on [the Supreme Court's] docket." *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (upholding nationwide class certification). However, it is within this court's discretion to determine whether nationwide relief is appropriate. *Id.* This challenge is directed at a specific, discrete INS policy that affects citizens nationwide. The claims of individual plaintiffs do not turn on the facts of their cases. The court, therefore, concludes that this suit is particularly suitable for nationwide class certification. *See Walters v. Reno*, 145 F.3d 1032 (9th Cir.1998) (upholding district court's nationwide class certification in suit challenging INS's regulations). Furthermore, anything less that a nationwide class would result in an anomalous situation allowing the INS to pursue denaturalization proceedings against some citizens, but not others, depending on which district they reside in.

## II.  CONCLUSION

The court ADOPTS the Magistrate Judge's R & R on class certification and DENIES the defendants' motion for a stay.

## ORDER GRANTING PRELIMINARY INJUNCTION AND DENYING MOTION TO DISMISS

THIS MATTER comes before the court on the plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss. The court has reviewed the documents filed in support of and in opposition to the motions together with the relevant files.  Being fully advised, the court grants the motion for a preliminary injunction and denies the motion to dismiss.

## I.  BACKGROUND

The plaintiffs are ten naturalized American citizens who have been served with a Notice of Intent to Revoke Naturalization (NOIR) by the Immigration and Naturalization Service (INS).  The basis for the notices in each case is the INS' assertion that the citizen failed to reveal his or her criminal record when applying for naturalization.  The plaintiffs challenge the validity of the agency regulation authorizing the INS to conduct administrative denaturalization procedures and ask this court to preliminarily enjoin the INS from initiating or continuing denaturalization proceedings under the regulation.  The defendants, which the court refers to collectively as the INS, move to dismiss their claims for lack of standing and ripeness.  Alternatively, the INS seeks to dismiss the claims of two individual plaintiffs, Irina Gorbach and Adolpho Erazo, contending their claims are moot and they lack standing to seek injunctive relief.

### A.  Denaturalization Proceedings

Before 1990, the power to naturalize American citizens rested exclusively with the federal district courts.  Under the Immigration and Nationality Act (INA) of 1990, Congress transferred this power to the Attorney Gen-

eral.  Pub.L. No. 101–649, tit. IV, § 401(a), 104 Stat. 4978, 5038.  The Attorney General subsequently delegated this power to the INS.  In 1996 the INS promulgated 8 C.F.R. § 340.1, which authorizes the INS to initiate and conduct administrative denaturalization proceedings.  Before the INS implemented this regulation, denaturalization proceedings were initiated exclusively by the Attorney General and conducted in the federal district courts.  The INS cited to the INA of 1990 as the statutory authority for 8 C.F.R. § 340.1.  At issue here is whether the INA of 1990 authorizes the INS to promulgate a regulation permitting non-judicial denaturalization proceedings and whether the plaintiffs have standing to challenge the regulation.  The plaintiffs have filed related motion for class certification, which the court has referred to a Magistrate Judge for a report and recommendation.

### 1.  Statutory Authority

Two provisions of the INA are relevant to this issue, section 340(a) and 340(h).[1]  Section 340(a) requires the U.S. Attorney to initiate denaturalization proceedings for concealment of material evidence or willful misrepresentation, where good cause is shown:

> It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured by concealment of a material fact or by willful misrepresentation . . .

8 U.S.C. § 1451(a).  When Congress amended the INA in 1990, it did not amend this provision.

The other provision at issue, section 340(h), governs the "[p]ower to correct, reopen alter, modify, or vacate order[s]" natu-

---

1. Congress originally enacted section 340(h) as section 340(j) and subsequently renumbered it as section 340(i) before it amended the INA in 1990.

For clarity, the court refers to all versions as section 340(h).

ralizing a person. 8 U.S.C. § 1451(h). Before 1990, this provision read:

> Nothing contained in this section shall be regarded as limiting denying or restricting the power of any naturalization court, by or in which a person has been naturalized, to correct, reopen, alter modify, or vacate its judgment or decree naturalizing such person, during the term of such court or within the time prescribed by the rules of procedure or statutes governing the jurisdiction of the court to take such action.

8 U.S.C. § 1451(i)(1988). When Congress transferred the power to naturalize citizens from the federal district courts to the Attorney General it amended section 340(h) to refer to the Attorney General and deleted the final clause of the provision. It now reads in its entirety:

> Nothing contained in this section shall be regarded as limiting, denying, or restricting the power of the Attorney General to correct, reopen, alter, modify, or vacate an order naturalizing the person.

8 U.S.C. § 1451(h). The INS relies on this amended provision as the source of its authority to conduct administrative denaturalization proceedings.

### 2. Administrative Denaturalization

The regulation the INS promulgated in 1996, 8 C.F.R. § 340, authorized, for the first time, non-judicial denaturalization proceedings. The regulation covers revocation of naturalization orders and is separated into two sections, section 340.1, which applies to the reopening of a naturalization application pursuant to section 340(h) of the INA and section 340.2, which applies to revocation proceedings pursuant to section 340(a) of the INA. Under section 340.1, the INS may, on its own motion, reopen a naturalization proceeding and revoke naturalization if it obtains "credible and probative evidence" that:

> (1) Shows that the [INS] granted the application by mistake; or
>
> (2) Was not known to the [INS] Officer during the original naturalization proceeding; and—

> (i) would have had a material effect on the outcome of the original naturalization; and
>
> (ii) would have proven that:
>
> (A) The applicant's application was based on fraud or misrepresentation or concealment of a material fact; or
>
> (B) The applicant was not, in fact, eligible for naturalization.

8 C.F.R. § 340.1(a).

The district director of the jurisdiction in which the citizen [2] resides has jurisdiction to institute administrative denaturalization proceedings provided a notice of intent to reopen naturalization proceedings and to revoke naturalization (NOIR) must be served within two years after the effective date of the order admitting a person to citizenship. If the district director determines that reopening a naturalization proceeding is warranted, he or she must prepare a written NOIR describing the grounds for reopening the proceedings and the evidence the director believes warrants reopening the proceedings. The notice must advise the citizen of his or her right to submit a response to the notice and to request a hearing. The INS must effect personal service of the NOIR.

The citizen has sixty days following service of the NOIR to submit a response to the INS, which may include any statements or additional evidence the application wishes to present. The citizen may request a hearing before an immigration officer within sixty days of receiving a NOIR. If a citizen fails to submit a response to the NOIR within 60 days, the failure to respond is deemed an admission of the grounds stated for revocation. When a NOIR has been served, the citizen bears the burden of persuading the district director that he or she was eligible for naturalization when the naturalization order issued. The district director is required to issue a written decision on the reopened naturalization application with 180 days of service of the NOIR. 8 C.F.R. § 340.1(b).

The district director is required to refer a case to the regional director for revocation proceedings under 8 C.F.R. § 340.2 (which

---

**2.** The regulations refer to a citizen who is the subject of a denaturalization proceeding as an "applicant." Since these individuals are already citizens, it is more accurate to refer to them as such.

governs revocation proceedings pursuant to section 340(a) of the INA) in two instances. One, where the citizen's answer to the NOIR and any additional evidence he or she submits "raises a genuine factual issue about the propriety of the applicant's naturalization, so that resolution of the factual issue will depend on the credibility of witnesses testifying under oath and subject to cross-examination." And two, when, "after rendering a decision on the merits, the district director determines that the applicant has adequately rebutted the allegations made in the [NOIR], but the district director thereafter obtains additional evidence" to support a revocation. 8 C.F.R. § 340.1(d)(2).

A citizen can appeal an adverse decision to the Administrative Appeals Unit within 30 days after receiving a notice of decision. The district director is then given 45 days to review the appeal before the Appeals Unit considers it and determine if the materials filed in support of the appeal "adequately rebut the grounds for reopening." If so, the district director can reconsider his or her decision and affirm the original decision naturalizing the citizen. If the district director affirms the original naturalization order, he or she does not need to forward the appeal to the Administrative Appeals Unit. A citizen can seek judicial review of an adverse decision by the Administrative Appeals Unit. 8 C.F.R. § 310.1(e). Until a decision to revoke naturalization becomes final, the subject of a denaturalization proceeding is "considered to be a citizen of the United States." 8 C.F.R. § 310.1(g)(4).

## II. MOTION TO DISMISS

As a threshold matter, the INS contends the plaintiffs cannot challenge 8 C.F.R. § 340.1 because they lack standing and their claims are not ripe. In the alternative, the INS argues that the individual claims of Irina Gorbach and Adolpho Erazo are moot and should be dismissed because it has terminated the denaturalization proceedings against them.

### A. Standing

■ To establish standing, "a person must show ... an invasion of a legally pro-

tected interest that is concrete and particularized and actual or imminent." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 117 S.Ct. 1055, 1067, 137 L.Ed.2d 170 (1997). The INS argues that none of the plaintiffs has standing because none of them has had his or her citizenship revoked through the administrative procedures challenged. Although the plaintiffs have all been served with a NOIR, the INS contends that the fact that they may be subject to an allegedly unconstitutional and unlawful denaturalization procedure is insufficient to establish standing because they have not been injured. The INS notes that the subject of a denaturalization proceeding retains his or her citizenship until a final decision has been rendered. It also argues that there is no redress for the injury alleged here because even if the court were to invalidate the administrative denaturalization regulation, the INS could still institute judicial denaturalization proceedings against the plaintiffs.

■ The court rejects the INS's argument. If the injury is defined solely as the ultimate loss of citizenship, the INS might be correct that the plaintiffs lack standing. Its argument, however, overlooks the fact that the plaintiffs face not only the potential loss of their citizenship, but also the imminent threat of facing an allegedly unlawful procedure to revoke their citizenship. Under Ninth Circuit law "[t]here is no question that a 'procedural injury' can constitute an injury in fact for the purpose of establishing standing." *Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 446 (1994). Furthermore, even if the plaintiffs do not ultimately have their citizenship revoked, they will nonetheless be injured because, by the initiation of denaturalization proceedings, their reputations are "tarnished" and their "standing in the community damaged." *United States v. Zucca,* 351 U.S. 91, 99–100, 76 S.Ct. 671, 100 L.Ed. 964 (1956).

The fact that the INS can still attempt to place plaintiffs in judicial denaturalization proceedings is of no consequence. Although some or all of the plaintiffs may ultimately lose their citizenship through a judicial naturalization proceeding, their challenge here is not aimed at the substantive basis of the

INS's decision to pursue administrative denaturalization proceedings. It is aimed at the procedural mechanism it has employed, which the plaintiffs allege is unlawful. The fact that the INS may be able to achieve the same result by a different means does not render the administrative procedure the plaintiffs are threatened with judicially unreviewable at this time.

### B. Ripeness

■ For the same reasons, the court rejects the INS's related argument that the plaintiffs' claims are not ripe until a final order of denaturalization has been entered or affirmed. The plaintiffs' claims are ripe because they are faced with an imminent threat of undergoing an allegedly unlawful procedure to revoke their citizenship. The court therefore rejects the INS's argument that the plaintiffs should be required to undergo the entire administrative procedure and have their citizenship revoked before they can obtain judicial review of their claims.

### C. Individual Claims

■ The INS has terminated the administrative revocation proceedings against Irina Gorbach, the lead plaintiff in the proposed class action, and Adolpho Erazo. The INS argues that their claims are now moot and should be dismissed. A class representative may continue to represent a class even if his or her own claims have become moot. *See County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). If the court ultimately certifies the proposed class in this case, the certification would relate back to the filing of the complaint and Gorbach and Erazo's claims would be properly included in the class action. *See Robidoux v. Celani,* 987 F.2d 931, 939 (2d Cir.1993). Dismissing Gorbach and Erazo without first ruling on the motion for class certification would be premature and the court declines to reach the issue at this time.

### III. PRELIMINARY INJUNCTION MOTION

### A. Preliminary Injunctive Relief Standard

■ The court will issue a preliminary injunction of the plaintiffs demonstrate "ei-

ther a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in [their] favor." *American–Arab Anti–Discrimination Comm. v. Reno,* 70 F.3d 1045, 1062 (9th Cir.1995). These are not separate tests. If the balance of harm tips decidedly toward the moving party, the party need not show as robust a likelihood of success on the merits. *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers,* 584 F.2d 308, 315 (9th Cir.1978). A serious question going to the merits is one on which the moving party has a fair chance of success or one serious enough to require litigation. *Id.* at 315.

The plaintiffs challenge 8. C.F.R. § 340.1 on three grounds. One, the content of the regulation exceeds its statutory authorization. Two, the administrative denaturalization proceedings authorized by the regulation violate Due Process. And, three, the regulation violates the Administrative Procedure Act. The court finds that the plaintiffs are entitled to a preliminary injunction on the first grounds; they have raised a serious question going to the merits concerning the INS's statutory authority to authorize and implement administrative denaturalization proceedings and the balance of harm tips heavily in their favor. Because this issue is dispositive, the court does not address the other two bases for preliminary injunctive relief.

### B. Statutory Authorization for 8 C.F.R. § 340.1

■ Both sides agree that there is no legislative history speaking to whether Congress intended to confer authority on the Attorney General (and, by delegation, the INS) to institute and conduct administrative denaturalization proceedings when it amended the INA to transfer the power to naturalize citizens from the federal district courts to the Attorney General. Thus, the court will only look to the statute and the regulation to determine if the INS has exceeded its statutory authorization.

The INS does not argue that Congress granted it greater powers to naturalize or denaturalize citizens when it amended the INA. When the INS promulgated 8 C.F.R. § 340.1, it recognized that "the amendment to section 340(h) of the [INA] simply replaces the court's jurisdiction with that of the Attorney General, leaving the authority described in that statute unchanged." 61 Fed.Reg. 55,551 (1996). The extent of the INS's power to denaturalize citizens under section 340(h), therefore, is the same as that possessed by the federal district courts before Congress transferred the power to naturalize citizens to the Attorney General.

Before Congress amended the INA, two different types of judicial denaturalization proceedings were authorized by 8 U.S.C. § 340. The first is a plenary proceeding instituted by the Attorney General and brought in federal district court under section 340(a) to set aside a naturalization order procured by concealment of a material fact or by wilful misrepresentation. *See Petition of Cardines,* 366 F.Supp. 700 (1973). The second is a summary proceeding under section 340(h) to reopen a naturalization judgment on any basis that would warrant reopening a judgment under Federal Rule of Civil Procedure 60(b). *Id.* That rule gives a court authority to reopen a judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

There are several differences between these two subsections of section 340. If a suit is brought under section 340(a), it must be based on an affidavit showing good cause. A respondent is entitled to a plenary proceeding and permitted to call and cross-examine witnesses. The standard of proof is strict; the government must prove its case by clear, unequivocal and convincing evidence. *Id.* at 702. The courts interpreted the other section, 340(h), to authorize a summary proceeding on a motion to reopen the judgment within one year of the judgment. Depending on the basis for the motion, the government's burden varied. If the motion was brought based on fraud, the government was required to prove fraud by clear and convincing evidence. *England v. Doyle,* 281 F.2d 304, 309 (9th Cir.1960). If the motion was brought based on newly discovered evidence, the government needed to show that (1) it discovered the evidence after the respondent was naturalized, (2) it could not have discovered the information through due diligence in time to deny naturalization; (3) the evidence is not merely cumulative or impeaching; and (4) the evidence would have been likely to change the disposition of the case. *Jones v. Aero/Chem Corp.,* 921 F.2d 875, 878 (9th Cir.1990).

The administrative denaturalization procedure authorized by § 340.1 does not resemble either of the two judicial procedures outlined above. Under the regulation, the INS can institute a denaturalization procedure when it believes it has "credible and probative" evidence that naturalization was granted by mistake. It does not need to show that the evidence could not have been discovered by due diligence; only that it was not known to the INS officer during the naturalization proceedings. Unlike judicial proceedings brought under the former section 340(h), which required Rule 60 motions to be brought within a year, the INS now has two years to institute actions under section 340(h). And, once the INS has reopened a naturalization order, the burden is on the citizen to refute the evidence forwarded by the government as grounds for denaturalization.

The court finds several difficulties the INS's position. First, given the significant differences between administrative denaturalization proceedings and judicial denatural-

ization proceedings, it is difficult to reconcile the content and scope of the regulation with the INS's acknowledgment that its power to denaturalize citizens under the current version of section 340(h) is the same as that previously possessed by the federal district courts under former section 340(h).

Second, the INS' argument relies on the unstated assumption that Congress' transfer of the power to *naturalize* citizens from the courts to the Attorney General also transferred to the INS broad powers to *denaturalize* citizens. While Congress clearly and unequivocally intended to do the former, the court is unpersuaded that section 340(h) can be read to confer power on the INS to institute an administrative denaturalization procedure that departs so drastically from the judicial denaturalization procedures previously authorized under section 340(h).

The sole basis the INS cites for its statutory authority is 8 U.S.C. § 340(h). It provides that "[n]othing contained in this section shall be regarded as limiting, denying, or restricting the power of the Attorney General to correct, reopen, alter, modify, or vacate an order naturalizing the person." While section 340(h) does allow the Attorney General to "reopen" or "vacate" naturalization orders, unlike section 340(a), which specifically governs denaturalization proceedings, section 340(h) does not even mention denaturalization proceedings. The court agrees with plaintiffs that this clause, at most, allows the Attorney General power to correct ministerial errors or reopen naturalization orders on the same grounds as the courts could under former section 340(h).[3]

The INS attempts to avoid this interpretation by arguing that cases interpreting former section 340(h) are inapplicable because the Attorney General is not bound by Rule 60(b). It contends, therefore, that there is no basis for superimposing the requirements of Rule 60 on the current version of section 340(h). It is obvious that Rule 60 does not apply to the Attorney General. But the INS's argument misses the point. The inquiry at this stage is not the precise limits of the INS's denaturalization power. It is whether the plaintiffs have raised a sufficiently serious question going to the merits of their case to be granted a preliminary injunction. The court finds that they clearly have.

Finally, the problem with the INS's position becomes apparent when 8 U.S.C. § 340(h), which it relied on in promulgating the regulation, is considered along side 8 U.S.C. § 340(a), and applied in this case. The INS has instituted administrative denaturalization proceedings under section 340(h) against the plaintiffs for allegedly misrepresenting or concealing their criminal backgrounds. This basis for revoking citizenship, however, is also covered by section 340(a), which requires United States attorneys to institute denaturalization proceedings if they have good cause to show that the naturalization was "procured by concealment of a material fact or by willful misrepresentation." If the INS is correct that it can institute administrative denaturalization proceedings where it believes a citizen has concealed or misrepresented his or her criminal background, then section 340(a), which requires a judicial proceeding instituted by a United States attorney, is rendered superfluous.

## IV. CONCLUSION

The court hereby DENIES defendants' motion to dismiss [docket 58–1] and GRANTS plaintiffs' motion for a preliminary injunction [docket 15–1]. The defendants are hereby enjoined from initiating or continuing administrative denaturalization proceedings under 8 C.F.R. § 340.1 pending final resolution of the merits of this case.

---

**3.** The INS repeatedly mischaracterizes the plaintiffs' position as maintaining that section 340(a) is the *sole* means to revoke a naturalization order. This is clearly not the law, nor is it the plaintiffs' position. *See United States v. Zucca,* 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964 (1956).

The plaintiffs are arguing that, at a minimum, if the INS's statutory authority to revoke naturalization orders under the amended section 340(h) is limited by the courts' interpretation of former section 340(h).